UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERRY AUSTIN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>WARDEN, )<br>)<br>Respondent. ) | No. 2:20-cv-00301-JRS-MJD |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Jerry Austin for a writ of habeas corpus challenges a prison disciplinary proceeding identified as ISF 20-03-0603. For the reasons explained in this Entry, Mr. Austin's habeas petition must be **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

**B.     The Disciplinary Proceeding**

On March 29, 2020, correctional officer Switzer wrote a conduct report that charged Mr. Austin with offense B-236, disorderly conduct. The conduct report stated:

> On 3-29-20 at approximately 0853 on the D-side dayroom of 11 south I c/o Switzer observed offender Austin Jerry #860212 get into an argument with offender Johnson Justin #232101. Offender Austin took off his shirt and tried to get offender Johnson to fight him in the middle of the day room. Offender Austin was yelling in a loud and aggressive manner. I ordered offender Austin to stop multiple times and he continued to be disorderly and I called a signal 10. QRT arrived and escorted offender Austin and Johnson out of the dorm. Offender Austin was notified of this conduct report and identified by his state-issued I.D.

Dkt. 7-1.

Mr. Austin was notified of the charge and provided a copy of the conduct report on April 6, 2020. Dkt. 7-2. He pleaded not guilty, requested and was provided a lay advocate, did not request any witnesses, and requested video to show that the other offender was threatening him. Dkt. 7-2; dkt. 7-3. The screening report indicated that Mr. Austin's mental health code was "C." Dkt. 7-2.[1]

The hearing officer reviewed the requested video and reported, "I observed offenders at a table in the D-Side day room. I see that you then stand up from the table and remove your shirt. I see that you then get into the face of another offender as additional staff enter the area to assist." Dkt. 7-5.

The hearing in case ISF 20-03-0603 was conducted on April 15, 2020. Dkt. 7-4. Mr. Austin's comment was that the other offender got in his face. *Id*. The hearing officer found Mr. Austin guilty based on staff reports, Mr. Austin's statement, and video evidence. *Id*. The record from Mr. Austin's administrative appeal included statements from Dr. Richard Bernhardt that said

---

[1] This code is explained in Sealed Exhibit G, a confidential document that is not disclosed to offenders for privacy and security reasons. Dkt. 8 (*ex parte*).

Mr. Austin had diagnoses of bipolar disorder, cervicalgia, COPD, seizure disorder, and basal cell carcinoma, and would benefit from his dog being trained as a seizure assistance dog. Dkt. 7-7 at 1-2. A medication list included multiple medications and also referred to a canine service dog and an electric scooter. *Id*. at 3.

The Disciplinary Code for Adult Offenders (DCAO) provides that if the offender's mental health code indicates that the offender has a mental illness, the hearing officer shall contact the mental health professional of the facility and determine whether the incident was a result of the offender's mental illness. *Id*. at 4. If the incident is not a result of the offender's mental illness, then the case will proceed normally. *Id*.

Mr. Austin filed an appeal with the facility head, stating that he was provoked while off his medication, he had a mental disorder, and was not in his right state of mind. Dkt. 7-6. His appeal was denied. *Id.* His second-level appeal to the final reviewing authority was also denied. Dkt. 7-8.

**C.     Analysis**

Mr. Austin alleges that his due process rights were violated in the disciplinary proceeding. His claims are: (1) his mental health disorder renders the charge lacking in sufficient evidence; (2) the charge should have been reduced to a "C" offense because of his mental disorder, in accordance with Indiana Department of Correction (IDOC) policy; and (3) the hearing officer was not impartial.

The first claim is treated as a challenge to the sufficiency of the evidence. The evidentiary standard for disciplinary habeas claims, "some evidence," is very low. "The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (citation and quotation marks omitted); *see also Ellison,* 820 F.3d at 274 ("a hearing officer's

decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."); *Donelson v. Pfister*, 811 F.3d 911, 916 (7th Cir. 2016) ("Under *Hill*, 'the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'") (quoting *Hill*, 472 U.S. at 455-56)). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). The conduct report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Mr. Austin was charged with offense B-236, which is defined as "[e]xhibiting conduct which disrupts the security of the facility or other area in which the offender is located." Dkt. 7-9. The conduct report states that Mr. Austin tried to get another offender to fight him and additional staff had to intervene. In addition, the video summary describes Mr. Austin getting in another offender's face. There was sufficient evidence to support the charge. To the extent Mr. Austin argues that the other offender got in *his* face, he asks the Court to reweigh the evidence, something the Court cannot do. *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455–56 (1985) ("Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Mr. Austin's second claim is that his offense should have been reduced to a "C" because of his mental health considerations, as provided by IDOC policy. Relief pursuant to § 2254 is available only on the ground that a prisoner "is being held in violation of federal law or the U.S. Constitution." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional

officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process."); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import – and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). This claim is not a viable habeas claim.

Mr. Austin next contends that the hearing office was not impartial, but admits a failure to present this third claim on appeal. The respondent argues that the claim should be denied for this admitted failure to exhaust state administrative remedies. Rather than expend judicial resources on this procedural argument, however, the Court elects to proceed to the merits of the claim. *See Washington v. Boughton,* 884 F.3d 692, 698 (7th Cir. 2018) ("We pause here to confirm that this approach is consistent with the interests of comity, finality, federalism, and judicial efficiency that are at the heart of both the exhaustion requirement and the procedural default doctrine.").

"A 'sufficiently impartial' decision-maker is . . . necessary, in order to shield the prisoner from the arbitrary deprivation of his liberties." *White v. Ind. Parole Bd.,* 266 F.3d 759, 768 (7th Cir. 2001). But "the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Id.*; *see Perotti v. Marberry*, 355 F. App'x 39, 43

(7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The presumption of impartiality is overcome only in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie,* 342 F.3d at 667.

Mr. Austin asserts that the hearing officer was upset with him during the hearing because Mr. Austin used some of the hearing officer's sanitizer. Dkt. 1 at 4. Mr. Austin believes that because the hearing officer was upset, he viewed Mr. Austin as if he was at fault. He does not allege that the hearing officer was involved in the underlying events at issue, nor does he otherwise allege any facts that satisfy the high standard required to establish bias. The presumption that the hearing officer was not improperly biased applies. This claim fails on the merits.

In sum, Mr. Austin was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt and Mr. Austin did not overcome the presumption the hearing officer was impartial. Under these circumstances, there were no violations of Mr. Austin's due process rights.

### D. Conclusion

For the above reasons, Mr. Austin is not entitled to the relief he seeks. His petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date:   3/22/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JERRY AUSTIN
860312
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov